IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SULACO ENTERPRISES LLC, | Case No. 2:25-cv- |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| RADWARE LTD. | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Sulaco Enterprises LLC ("Sulaco" or "Plaintiff") for its Complaint against Radware Ltd. ("Radware" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1. Sulaco is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 170, Marshall, TX 75670.

2. Upon information and belief, Defendant Radware Ltd. is a corporation organized under the laws of Israel, with its principal place of business located at 22 Raoul Wallenberg Street, Tel Aviv 69710, Israel, and may be served pursuant to the provisions of the Hague Convention. Upon information and belief, Radware does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

**JURISDICTION**

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant. Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

6. Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENT-IN-SUIT

7. On March 24, 2015, the United State Patent and Trademark Office duly and legally issued U.S. Patent No. 8,990,942 (the "'942 Patent") entitled "Methods and Systems for API-Level Intrusion Detection". A true and correct copy of the '942 Patent is available at: https://patentimages.storage.googleapis.com/42/af/9e/b73bd5bf2c7d68/US8990942.pdf.

8. Sulaco is the sole and exclusive owner of all right, title, and interest in the '942 Patent (the "Patent-in-Suit") and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. Sulaco also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

9. Sulaco has at all times complied with the marking provisions of 35 U.S.C. § 287

with respect to the Patent-in-Suit. Upon information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

10. The '942 Patent generally relates to API-level intrusion detection for monitoring and analyzing API calls to detect malicious or unauthorized activity. The technology described in the '942 Patent was developed by inventors Anand Thakadu, Anirban Bhattacharya, Kuldip Shetty, Krishna Prasad Muraleedharan Pillai, Ravi Udaya Kumble, Sourav Bhattacharya, Venu Aluri, and Vitesh Patel. By way of example, this technology is implemented in hardware and software products that provide API-level intrusion detection and sandboxing capabilities.

11. Defendant has infringed and continues to infringe the Patent-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patent-in-Suit.

## COUNT I
### (Infringement of the '942 Patent)

12. Paragraphs 1 through 11 are incorporated by reference as if fully set forth herein.

13. Sulaco has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '942 Patent.

14. Defendant has and continues to directly infringe the '942 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '942 Patent. Such products include but are not limited to Radware Application Protection Products including but not limited to Radware Cloud Application Protection Service, Radware Cloud WAF, Radware Bot Manager, Radware API Protection, Radware Web DDoS Protection, Radware Client Side Protection, Radware LLC

Firewall, Radware Threat Intelligence, Radware Kubernetes WAAP, Radware Alteon Integrated WAF, Radware DDoS Protection Products including but not limited to Radware Cloud Firewall-as-a-Service and Radware Application Delivery Products including but not limited to Radware Alteon Application Delivery and Security, and Radware SSL Inspection Solutions.

15. For example, Defendant has and continues to directly infringe at least claim 22 of the '942 Patent by making, using, offering to sell, selling, and/or importing into the United States products that provide API-level intrusion detection and sandboxing capabilities. For example, the Radware API Protection Product performs an application programming interface (API)-level intrusion detection method. The Radware API Protection Product performs the step of receiving an API call for a service at an API sandbox module. The Radware API Protection Product performs the step of parsing the API call to extract at least one of: an API call name; or one or more API call parameters.

> **Real-time Automated Protection for Any Type of API Attack**
>
> Effective API protection starts with an intimate familiarity with all APIs of the application. This is why continuous auto-discovery of APIs is essential. Our solution generates a detailed schema file that is automatically converted into accurate and up-to-date positive security policies. This process enables real-time protection of your APIs against embedded attacks, which is crucial for detecting threats hidden within API calls.
>
> Seamless authentication and authorization enforcement are also key components of our solution. We ensure that only API calls with a validated token are allowed. However, many attacks are carried out by authenticated users who discover loopholes in the business logic, allowing them to perform unauthorized API calls.
>
> Radware's API protection solution addresses these business logic vulnerabilities with unparalleled real-time detection and immediate mitigation of business logic attacks. Our AI-driven protection engine goes beyond analyzing logs of past attacks by continuously learning the API's business logic directly from real-time transactions. This enables the detection of malicious API calls as they occur. Our solution takes immediate action by automatically generating and applying security policies in real-time to block business logic attacks, ensuring comprehensive protection for your APIs.

[1]

---

[1] Radware API Protection Solution Brief, at 3. Dated July 28, 2024.

16. The Radware API Protection Product performs the step of generating a copy of the at least one of: the API call name or the one or more API call parameters. The Radware API Protection Product performs the step of providing, to an intrusion detection rules execution engine including one or more hardware processors, the copy of the at least one of: the API call name or the one or more API call parameters.

> **Real-time Automated Protection for Any Type of API Attack**
>
> Effective API protection starts with an intimate familiarity with all APIs of the application. This is why continuous auto-discovery of APIs is essential. Our solution generates a detailed schema file that is automatically converted into accurate and up-to-date positive security policies. This process enables real-time protection of your APIs against embedded attacks, which is crucial for detecting threats hidden within API calls.
>
> Seamless authentication and authorization enforcement are also key components of our solution. We ensure that only API calls with a validated token are allowed. However, many attacks are carried out by authenticated users who discover loopholes in the business logic, allowing them to perform unauthorized API calls.
>
> Radware's API protection solution addresses these business logic vulnerabilities with unparalleled real-time detection and immediate mitigation of business logic attacks. Our AI-driven protection engine goes beyond analyzing logs of past attacks by continuously learning the API's business logic directly from real-time transactions. This enables the detection of malicious API calls as they occur. Our solution takes immediate action by automatically generating and applying security policies in real-time to block business logic attacks, ensuring comprehensive protection for your APIs.[2]

17. The Radware API Protection Product performs the step of determining, via the intrusion detection rules execution engine, whether the API call is in violation of one or more security rules obtained from a security rules object. The Radware API Protection Product performs the step of providing an indication of whether the API call is in violation of the one or more security rules.

---

[2] *Id.*

> **Real-time Automated Protection for Any Type of API Attack**
>
> Effective API protection starts with an intimate familiarity with all APIs of the application. This is why continuous auto-discovery of APIs is essential. Our solution generates a detailed schema file that is automatically converted into accurate and up-to-date positive security policies. This process enables real-time protection of your APIs against embedded attacks, which is crucial for detecting threats hidden within API calls.
>
> Seamless authentication and authorization enforcement are also key components of our solution. We ensure that only API calls with a validated token are allowed. However, many attacks are carried out by authenticated users who discover loopholes in the business logic, allowing them to perform unauthorized API calls.
>
> Radware's API protection solution addresses these business logic vulnerabilities with unparalleled real-time detection and immediate mitigation of business logic attacks. Our AI-driven protection engine goes beyond analyzing logs of past attacks by continuously learning the API's business logic directly from real-time transactions. **This enables the detection of malicious API calls as they occur. Our solution takes immediate action by automatically generating and applying security policies in real-time to block business logic attacks, ensuring comprehensive protection for your APIs.**[3]

18.  Upon information and belief, The Radware API Protection Product uses an API sandbox module co-located at an enterprise software gateway and performs the step of receiving API calls for user selected developers and user selected API name references and performs the step of processing the received API calls for application specific intrusion detection.

19.  Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Radware has used the Accused Products in a manner that directly infringes at least claim 22 of the '942 Patent.

20.  Defendant has and continues to indirectly infringe one or more claims of the '942 Patent by knowingly and intentionally inducing others, including Radware customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

---

[3] *Id*.

21. Defendant, with knowledge that these products, or the use thereof, infringe the '942 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '942 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees not to review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patent-in-Suit at least as early as the issuance of the Patent-in-Suit.

22. Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '942 Patent, but while remaining willfully blind to the infringement.  Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.

23. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '942 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '942 Patent is directly infringed by others. The accused components within the Accused

Products are material to the invention of the '942 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '942 Patent. Defendant performs these affirmative acts with knowledge of the '942 Patent and with intent, or willful blindness, that they cause the direct infringement of the '942 Patent.

24. Sulaco has suffered damages as a result of Defendant's direct and indirect infringement of the '942 Patent in an amount to be proven at trial.

25. Sulaco has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '942 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Sulaco prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patent-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patent-in-Suit;

c. An order awarding damages sufficient to compensate Sulaco for Defendant's infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Sulaco its

costs and reasonable attorney fees under 35 U.S.C. § 285; and

    e.    Such other and further relief as the Court deems just and proper.

Dated: December 16, 2025

Respectfully submitted,

<u>/s/ Vincent J. Rubino, III</u>
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF,
SULACO ENTERPRISES LLC***